**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1179
_____

OLUKAYODE DAVID OJO,
                                              Appellant

v.

WARDEN ELIZABETH DETENTION CENTER
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:18-cv-08725)
District Judge: Honorable Jose L. Linares
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on March 2, 2020

Before: JORDAN, BIBAS, and PHIPPS, Circuit Judges

(Opinion filed: April 8, 2020)
_____

OPINION*
_____

PER CURIAM

   Olukayode David Ojo appeals from three orders of the U.S. District Court for the Dis-

trict of New Jersey. The District Court denied his petition for writ of habeas corpus under

_____
* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

28 U.S.C. § 2241, denied Ojo's motion for reconsideration, and denied Ojo's second motion for reconsideration. We will affirm.

Ojo is a citizen of Nigeria who entered the United States as a nonimmigrant visitor in 2010. He was permitted to stay until April 2011, but he remained in the United States. In July 2011, Ojo was arrested on federal wire fraud charges. In 2014, he was convicted in the U.S. District Court for the Eastern District of New York of conspiracy to commit wire fraud and conspiracy to commit document fraud. Ojo appealed his conviction.

Meanwhile, in March 2014, immigration officials took Ojo into custody on removability charges for overstaying his visa. At Ojo's May 2014 hearing before an Immigration Judge (IJ), the IJ granted Ojo's request for a change in custody status to allow for Ojo's release on bond, which was set at $50,000. In August 2014, the IJ lowered the bond amount to $22,500. The IJ denied Ojo's later request to lower the bond amount, and Ojo appealed to the Board of Immigration Appeals (BIA). On March 19, 2015, the BIA affirmed the IJ's denial of another bond redetermination because Ojo had not established a material change in circumstances.

In December 2014, Ojo filed a habeas petition in the District Court, seeking his release from immigration custody. Ojo v. Aviles, No. 2:14-cv-07951 (D.N.J.). On March 31, 2015, the Government filed a joint stipulation and request for dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1), agreeing to an immigration bond redetermination in an amount that Ojo's family could afford, and noting the mootness of Ojo's habeas petition given that agreement. The District Court granted the joint request for dismissal that same day. In April

2015, after another bond hearing, the IJ set the bond amount at $2,000. Ojo paid the bond, and he was released.

Ojo's criminal conviction eventually became final for immigration purposes. See Orabi v. Att'y Gen. of the U.S., 738 F.3d 535, 542 (3d Cir. 2014) (conviction is final for immigration purposes after the completion of direct appellate review). The U.S. Court of Appeals for the Second Circuit affirmed Ojo's conviction in November 2015, noting that the trial evidence established a loss amount of about $80,000. See United States v. Ojo, 630 F. App'x 83, 86 (2d Cir. 2015) (per curiam). The U.S. Supreme Court denied certiorari in March 2016. See Ojo v. United States, 136 S. Ct. 1473 (2016).

More than two years later, in April 2018, the Government added new charges of removability, including that Ojo was removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having committed an aggravated felony. As a result, Ojo was retaken into immigration custody, this time under the mandatory detention provision of 8 U.S.C. § 1226(c) applicable to certain criminal aliens pending removal proceedings, including those having committed an offense covered under § 1227(a)(2)(A)(iii). See id. § 1226(a)(c)(1)(B). The IJ denied bond at Ojo's custody hearing, determining that Ojo was subject to mandatory detention under § 1226(c).

As his immigration removal proceedings continued, in May 2018, Ojo filed the § 2241 habeas petition here, seeking release from immigration custody. The District Court denied relief, concluding that Ojo's detention under § 1226(c) was proper and that his seven-month mandatory detention did not rise to the level of constitutional concern. The District Court later denied Ojo's two motions for reconsideration. Ojo timely appealed the District

3

Court's denial of habeas relief, and he also timely amended his notice of appeal to include the District Court's later orders denying his motions for reconsideration. We have jurisdiction under 28 U.S.C. § 1291 to review the District Court's decisions in Ojo's § 2241 habeas case.[1]

Ojo argues he is entitled to habeas relief because his re-detention violates the parties' stipulation entered in his 2014 § 2241 habeas case. As we understand it, Ojo's position rests on his belief that his initial detention was mandatory under § 1226(c), and that the parties' stipulated agreement forecloses the Government from retaking him into § 1226(c) mandatory detention. In so arguing, Ojo maintains that the District Court incorrectly determined that his initial detention was under § 1226(a) instead of § 1226(c).

We disagree. The record shows that it had been established at the agency level that § 1226(a) governed Ojo's initial immigration detention. As noted above, in 2014, Ojo was charged with removability for having overstayed his visa. The IJ granted a change in Ojo's custody status to allow for release on bond and set a bond amount. In affirming the IJ's decision, the BIA specifically noted that "[t]here is no dispute that the instant custody

---

[1] We asked the parties for supplemental briefing to address (1) whether a final order of removal has issued in Ojo's immigration proceedings; (2) Ojo's removal and custody status; and (3) if Ojo remains in immigration custody, whether the nature of his custody has changed from pre-removal-order custody to post-removal-order custody so as possibly to moot his appeal. See 8 U.S.C. § 1231(a)(1)(B). The Government informed us that the agency issued a final removal order, and Ojo's petition for review of that order is pending before the Second Circuit. See Ojo v. Barr, No. 19-3237 (2d Cir. filed Oct. 8, 2019). The Government initially argued that Ojo's appeal had become moot. In a more recent filing, the Government withdrew that argument in light of the Second Circuit's March 9, 2020 order granting Ojo's motion for a stay of his removal. See 8 U.S.C. § 1231(a)(1)(B)(ii). We conclude that Ojo's habeas appeal of his § 1226 detention is not moot, and we will address the merits of his appeal.

4

proceeding is governed by the provisions of . . . § 1226(a)." Appellee's Supp. App. 53. Indeed, while § 1226(a) allows for an alien's release on bond, § 1226(c), which governs the mandatory detention of certain criminal aliens pending removal decisions, does not. Thus, Ojo's prior detention (and release) was pursuant to § 1226(a), and his 2014 habeas petition concerning that detention was resolved by agreement of the parties. In contrast, Ojo's current period of detention under § 1226(c) relates to new removability charges as a criminal alien. It neither pertains to nor violates the stipulation concerning his previous § 1226(a) detention for the visa-overstay charge. Nor does it somehow revive the issues raised in his 2014 habeas petition challenging that § 1226(a) detention.

Next, Ojo disputes the classification of his convictions as aggravated felonies that trigger mandatory detention under § 1226(c). Ojo was convicted of conspiring to commit wire fraud, which qualifies as an aggravated felony if the loss to the victim or victims exceeds $10,000. See Doe v. Att'y Gen. of the U.S., 659 F.3d 266, 274–75 (3d Cir. 2011). Ojo disputes the loss amount attributable to him, and he states in his reply brief that he continues to challenge the issue in his pending removal proceedings. However, § 1226(c)(1)(B) and the applicable regulations direct the Government to "detain an alien if there is 'reason to believe that [he] was convicted of a crime covered by the statute.'" Diop v. ICE/Homeland Sec., 656 F.3d 221, 230 (3d Cir. 2011) (emphasis added) (quoting Procedures for the Detention and Release of Criminal Aliens by the Immigration and Naturalization Service and for Custody Redeterminations by the Executive Office for Immigration Review, 63 Fed. Reg. 27,441, 27,444 (May 19, 1998)); see also 8 C.F.R. § 236.1; Joseph, 22 I. & N. Dec. 660, 668 (B.I.A. 1999). We are satisfied on the record before us that the Government had

5

"reason to believe" that Ojo was convicted of a crime that subjected him to § 1226(c)(1)(B) mandatory detention pending removal proceedings. Whether his conviction constitutes an aggravated felony "as a definitive legal matter" is irrelevant for purposes of the pre-removal mandatory detention statute. See Diop, 656 F.3d at 230. The District Court thus did not err in denying habeas relief on this ground.[2]

Ojo also argues that the length of his detention is unreasonably long and violates due process. In Diop, this Court concluded that while the statute itself contains no time limitations on the duration of detention, the duration must remain reasonable to comport with due process. See Diop, 656 F.3d at 631. The Supreme Court since has abrogated the statutory interpretation aspect of the Diop decision, holding that § 1226(c) mandates the detention of any alien falling within its terms, without an implied time limit. See Jennings v. Rodriguez, 138 S. Ct. 830, 846 (2018). However, "Jennings did not call into question our constitutional holding in Diop that detention under § 1226(c) may violate due process if unreasonably long." Borbot v. Warden Hudson Cty. Corr. Facility, 906 F.3d 274, 278 (3d Cir. 2018). To prevail, an alien must show that as applied in his or her case, application of the statute is so arbitrary and unreasonable that it constitutes an arbitrary deprivation of liberty. See, e.g., Chavez-Alvarez v. Warden York Cty. Prison, 783 F.3d 469, 474 (3d Cir.

---

[2] The parties raise several arguments relating to this issue, including whether the District Court inappropriately reached definitive conclusions on the aggravated felony question and amount of loss; and whether the parties' arguments have been exhausted, waived, or adjudicated during removal proceedings, employment authorization proceedings, or District Court proceedings. We need not reach these arguments in light of our discussion.

2015). This is a "fact-dependent inquiry that will vary depending on individual circumstances." Diop, 656 F.3d at 233.

Ojo argues that the District Court erred in failing to aggregate the duration of his initial § 1226(a) detention that began in March 2014 with his current § 1226(c) detention. He provides no support for this position. Although Ojo accurately notes that both detentions are rooted in § 1226, the due process inquiry of an overly long detention does not apply to Ojo's § 1226(a) detention, given that he had a bond hearing and was granted release on bond, and that he had bond redetermination proceedings. See Borbot, 906 F.3d at 278–79. He could have left immigration detention as early as May 2014 upon payment of the bond amount set by the IJ. Ultimately, he did not remain detained on the overstay removability charge; he obtained the release he sought in his prior habeas petition and bond redetermination proceedings. There is no reason to aggregate Ojo's periods of detention.

To the extent Ojo also contends that the District Court erred in concluding that his current § 1226(c) detention, considered individually, was not overly long, we disagree. The District Court considered the duration of Ojo's mandatory custody, noting that it began after Ojo had been free on immigration bond for several years and had reached seven months at the time of the District Court's ruling. Ojo has not demonstrated that the period amounted to an arbitrary and unreasonable deprivation of liberty under the specific facts and circumstances of his case. We discern no error in the District Court's conclusion.

Accordingly, we will affirm the District Court's orders. The parties' motions to file supplemental appendices and to supplement the record are granted. Ojo's motion to show cause is denied as moot. Ojo's motion to file his supplemental brief out of time is granted.